UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DOCINA RENE ESPINO, | |
| Plaintiff, | CASE NO. C09-5262RBL |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | Noted for May 14, 2010 |
| Defendant. | |

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court remand the matter to the administration for further consideration.

INTRODUCTION AND PROCEDURAL HISTORY

The ALJ's mischaracterization of the treatment records provided by plaintiff's chiropractors may have unfairly prejudiced the review of her application for social security

REPORT AND RECOMMENDATION - 1

disability benefits.  The matter should be remanded to the administration to reconsider the evidence, including the credibility of plaintiff's testimony.

Plaintiff, Docina Espino, was born in 1953.  Tr. 377.  Plaintiff has a high school education, and she has several years of work experience as an inside sales representative at a hydraulics distribution company.  Tr. 53, 58, 82.  As a sales representative, she answered customer sales calls, entered orders into computers, expedited orders with vendors, contacted vendors for product information, and performed related telephone and computer duties.  Tr. 59.  She sat, wrote, typed, and/or handled small objects most of the day.  Tr. 59.

In March 2004, plaintiff was examined by her primary care physician, Dr. Kelly, for complaints of ongoing pain in her neck, shoulder and back.  Tr. 267.  Dr. Kelly referred her for an MRI, which subsequently revealed a moderate spinal stenosis and deformity of the thecal sac at C4-05 of her cervical spine.  Tr. 264.  On March 24, 2004, plaintiff was referred to and examined by Dr. Nehls, a neurosurgeon.  Tr. 146.  Dr. Nehls recommended cervical discectomies and fusions at C4-5 and C5-6.  Tr. 147.  The surgery was performed on April 26, 2004.  Tr. 141-42.

Following surgery and time for recovery, plaintiff returned to work, but pain in her neck and back did not go away.  Tr. 148-49.  Plaintiff stopped working February 11, 2005, due to persistent pain in her neck, back, hands, and left leg.  Tr. 575-76.

On November 1, 2005, plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act ("Act"), alleging disability beginning February 11, 2005.  Tr. 13, 26-27, 53-56.  The claim was denied initially and plaintiff filed a timely request for a hearing before an administrative law judge ("ALJ").  Tr. 13.  An ALJ conducted a hearing on May 21, 2008.  Tr. 572-94.  On July 21, 2008, the ALJ issued a decision, finding that plaintiff had severe impairments,

REPORT AND RECOMMENDATION - 2

but retained the capacity to perform her past relevant work as a sales representative, and was, therefore not considered disabled. Tr. 13-22. On March 3, 2009, the Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. 20 C.F.R. §§ 404.981, 422.210 (2009)

Plaintiff now seeks judicial review of the administrative decision. She specifically alleges: (1) the ALJ failed to properly evaluate the opinions of two treating chiropractors, and consequently, plaintiff's residual functional capacity; and (2) the ALJ erred in finding plaintiff's allegations less than fully credible.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 201 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

Plaintiff bears the burden of proving that he or she is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act

REPORT AND RECOMMENDATION - 3

defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment that has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

## DISCUSSION

### 1. *The ALJ Improperly Evaluated the Medical Opinion Evidence*

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir.1984) (citation omitted). The ALJ must only explain why "significant probative evidence has been rejected." Id.

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.2001). An examining

REPORT AND RECOMMENDATION - 4

physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, plaintiff argues the ALJ's residual functional capacity assessment did not properly incorporate the medical opinions of Dr. McMillin and Dr. Stemp and does not include all of plaintiff's limitations. The ALJ found that plaintiff had the residual functional capacity to perform the full range of light work. The ALJ explained that the finding is based primarily on the physical assessment of Dr. Hoskins and Dr. Shulman. Tr. 18. However, as explained below, the ALJ unfairly characterized the chiropractors as non-medical sources and further failed to explain why he did not accept all of both Dr. Hoskins' and Dr. Shulman's limitations.

REPORT AND RECOMMENDATION - 5

First, the ALJ mischaracterized the opinions as "non-medical" sources. Both of these doctors are chiropractors, and thus are not considered acceptable medical sources under the administrative regulations. SSR 06-3p. However, chiropractors are considered "other sources" for evidence regarding a claimant's impairments. 20 CFR §404.1513(d). SSR 06-3p explains that in some instances "other evidence" such as treatment records from chiropractors, nurse practitioners, etc. may be given more weight than acceptable medical sources. SSR 06-3p. It is clear the ALJ discounted the opinions on the erroneous basis that the evidence is from a "non-medical source." Defendant concedes this point, but argues the characterization is harmless. The undersigned disagrees. The error may have prejudiced the review of plaintiff's evidence by the administration.

In September 2005, Dr. McMillin concluded that plaintiff was not able to be around moving machinery or exposed to marked changes in temperature and humidity. Tr. 182. Dr. McMillin limited plaintiff to sitting for 2 hours and standing/walking for 3 hours during an 8-hour day and at only 10 minutes at a time with appropriate breaks. Tr. 182. The ALJ considered the opinion, stating, "This opinion, however, does not merit much weight in the determination of the claimant's residual functional capacity. This chiropractor did not refer to any objective findings in reaching his determinations concerning the claimant's RFC. The opinion, which is based on minimal findings, such as lumbosacral strain, is from a non-medical source." Tr. 20.

Similarly, Dr. Stemp described the claimant as being only able to occasionally lift and carry 10 pounds. Tr. 20. In another report completed by Dr. Stemp plaintiff was described as being totally incapable of doing any lifting or carrying. Tr. 203. Dr. Stemp stated plaintiff was unable to bend, squat, crawl, climb and reach above shoulder level. Tr. 203. In the remarks section, Dr. Stemp wrote that plaintiff continued to suffer from moderate to severe pain levels with only minimal activities and that even sitting 1.5 hours will exacerbate her condition. Tr. 203. The ALJ rejected the evidence on the same basis he rejected Dr. McMillin's opinion.

REPORT AND RECOMMENDATION - 6

Defendant argues the ALJ properly dismissed the evidence for lack of objective medical findings, however, given the error that the ALJ did not properly consider the "other evidence" in accordance with SSR 06-03p, the court is not persuaded by this argument. In contrast, it appears Dr. McMillin's and Dr. Stemp's opinions were based upon objective evidence, as both chiropractors provided substantial treatment over a lengthy period and their assessments as to her functional capacity were based upon evidence accumulated through the course of their treatment and testing. Tr. 188, 316, 330, 336-37, 444. It is not within the province of the court to re-weigh the evidence presented. Because the ALJ erred in evaluated the "other evidence," the matter should be remanded for further consideration.

On further review the court also notes that although the ALJ states he based his residual functional capacity assessment on Dr. Hoskins, a non-examining medical source, and Dr. Schulmann, a onetime medical examining consultant, he did not accept all of their limitations. For instance, Dr. Hoskins imposed some postural limitations and indicated that plaintiff had a "limited" ability to reach. Tr. 131-33. The ALJ accorded weight to Dr. Hoskins, but declined, without discussing the reasons, to accept the reaching limitation. Tr. 18-21.

In sum, the ALJ's review of Dr. McMillin's and Dr. Stemp's opinions may have been unfairly limited due to the ALJ's misunderstanding that the evidence was from a non-medical source. The mischaracterization of the evidence may have prejudiced review of plaintiff's application for benefits. The ALJ also failed to address significant and probative evidence (Dr. Hoskin's reaching limitation) without discussing the reasons for not including a reaching limitation in plaintiff's residual functional capacity. The court cannot accept defendant's assertion that this was harmless error when Dr. Hoskin's opinion was one of the primary medical opinions that formed the basis for the ALJ's findings.

REPORT AND RECOMMENDATION - 7

### 2. *Plaintiff's Statements and Allegations Regarding the Severity of Her Impairments Should Be Reconsidered*

Credibility determinations are particularly within the province of the ALJ. Andrews, 53 F.3d at 1043. Nevertheless, when an ALJ discredits a claimant's subjective symptom testimony, he must articulate specific and adequate reasons for doing so. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir.2006). The determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir.1991)(*en banc*). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, 80 F.3d at 1284; Reddick, 157 F.3d at 722.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989). When evaluating a claimant's credibility, however, the ALJ "must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints." Greger, 464 F.3d at 972 (*internal quotation omitted*). General findings are insufficient. Smolen, 80 F.3d at 1284; Reddick, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness, inconsistencies in testimony or between her testimony and conduct, daily activities, work record, and the testimony from

REPORT AND RECOMMENDATION - 8

physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Smolen, 80 F.3d at 1284.

Here, the ALJ provided legitimate reasons to discredit plaintiff's allegations with respect to the severity of her limitations. The ALJ wrote in length and in detail, explaining as follows:

> At the hearing, the claimant testified that she experienced pain all over her body. She alleged numbing and tingling in her hands and wrists and pain in her back, neck, arms and legs. Another complaint was the experience of muscle spasms in her right shoulder blade. According to her testimony, her range of motion was limited, especially in her neck movements.
>
> In estimating her physical abilities, the claimant stated that she was unable to lift a gallon of milk. She also reported that she was able to sit for less than 1 hour and that she was able to sit/stand for 10 minutes.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.
>
> The objective medical findings do not support the degree of limitation alleged by the claimant. When seen by Dr. Nehls in March 2004, she walked with a normal gait and evidenced a full range of motion in her lumbar and cervical spine. Her muscle bulk, strength, and tone were normal and her sensation was normal to light touch (Ex. 3F-17).
>
> In January 2005, she again exhibited normal bulk and tone, as well as 5/5 strength throughout. Her sensations was intact to pinprick, light touch, vibration, and proprioception (Ex.4F-2). Her casual gait was independent and normal. Other findings included the ability to walk on her toes and heels and to tandem walk normally (Ex 4F-2). As noted by Michael Kelly, M.D., during this month, studies showed post-operative changes but no evidence of significant pathology (Ex. 8F-23). David Deutsch, M.D., in interpreting x-rays of the cervical spine in April 2005, found that the claimant had a solid fusion with no significant cervical spondyloarthropathy (Ex 9F-52).
>
> By February 2006, the claimant had many pain complaints, but she ambulated without difficulty and moved on and off the examination table without difficulty (Ex. 10F-2). By February 2007 and March 2008, her physical and mental examination was essentially normal (Ex 20F-5, 20F-6, 20F-32 and 20F-33).

REPORT AND RECOMMENDATION - 9

> The claimant's activity level does not support her allegations of disability. In January 2006, the claimant reported that she was exercising three times a week (Ex 14F-27). At the hearing the claimant reported that she continued to use the stretches and exercises that she had learned at physical therapy. She also testified that she went to the market, prepared meals "a couple of times" a week, and engaged in her hobby of reading.
>
> In fact, doctors have not found the claimant unable to perform work activity. In September 2004, the claimant requested a letter from Jenny O'Neal, M.D., in support of "short term disability" (Ex 8F-39). Her request, in fact, was not based on a medical reason, but simply because she wanted "a couple of months" while undergoing physical therapy. Dr. O'Neal declined to provide such a letter.
>
> The claimant is believable in her contention that she has some pain as her allegation is supported by the variety of pain medications that have been prescribed to alleviate her complaints (Ex 20F-32). For instance, she was tried on such medications as Vicodin, Soma, Flexeril, and Advil and advised to use such modalities as ice packs and heat. Botox injections were also suggested as a means of dealing with her pain (Ex. 20F-33). Yet, she was not taking any significant medications by the time of Dr. Kelly's progress note in March 2008 and she experienced no side effects from her medications (Ex 20F-1).
>
> However, the fact that a person cannot work without some pain or discomfort does not render her disabled. Tonapetyan v. Halter, 242 F.2d 1144 (9th Cir. 2001). See, Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996); Barajas v. Heckler, 738 F.2d 641, 644 (5th Cir. 1984); Dumas v. Schweiker, 712 F.2d 1545, 1552 (2nd Cir. 1983). Thus, while the claimant may have pain, this does not mean that she is unable to perform any work activity as she alleged, and for the reasons indicated she is not credible to the extent that her pain can be considered to be disabling.
>
> A picture of the claimant emerges as an individual who is not self-motivated for recommended treatment. Chart notes from Star Physical Therapy mention her failure to use a pool as advised (Ex. 24F).
>
> Additionally, the medical record has noted that the claimant was in no distress in March 2008, declaring that she felt "fine" (Ex. 20F-13, 20F-15, and 20F-18), militating against crediting her complaints fully.
>
> For all of these reasons, the claimant's allegations concerning her subjective complaints and limitations were not convincing.

Tr. 18-20.

REPORT AND RECOMMENDATION - 10

Plaintiff argues it was erroneous for the ALJ to discount plaintiff's credibility, alleging the ALJ's reasons are not properly supported by the record. Review of the argument shows the ALJ erred in a few of his reasons for rejecting plaintiff's testimony, but not other reasons. For instance, the ALJ erred when he stated plaintiff was not self-motivated because of her failure to follow through with pool therapy. The ALJ's reasoning fails to address plaintiff's testimony that she could not afford to undergo pool therapy. Tr. 577. The ALJ also mischaracterized Dr. O'Neal's declination to complete plaintiff's disability report. Dr. O'Neal did decline to provide such a letter, but she felt that another doctor was in a better position to make the assessment of disability or non-disability. Tr. 252.

In light of the finding that the ALJ failed to properly consider the medical opinion evidence and plaintiff's residual functional capacity, discussed above, the undersigned also finds plaintiff's credibility should also be reconsidered.

## CONCLUSION

Based on the foregoing, the Court should remand the matter to the administration for further consideration. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **May 14, 2010**, as noted in the caption.

DATED this 19th day of April, 2010.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11